**RECEIVED**

DEC 30 2013

JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC

**FILED**

DEC 30 2013

JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK


# UNITED STATES DISTRICT COURT

## 2 PRINCESS STREET
## WILMINGTON, NC 28401

No. _____

MICHAEL ALAN JOHNSON

V.

DETECTIVE J.S. PINNEY

DETECTIVE A. FREEMAN

MAGISTRATE W.R. WHITTED

THOMAS L. OLD

NEW HANOVER COUNTY, NC

STATE OF NORTH CAROLINA

NOW COMES MICHAEL ALAN JOHNSON, PLAINTIFF,
AND HEREBY PETITIONS THE COURT TO ALLOW HIM
TO PROCEED, IN PAUPERIS, TO FILE SUIT AGAINST
THE ABOVE-LISTED DEFENDANTS. PLAINTIFF MAKES
CLAIM THAT SAID DEFENDANTS DID, WILLFULLY, AND
WITH DISREGARD TO DUE PROCESS OF LAW, VIOLATE
THE CIVIL AND CONSTITUTIONAL RIGHTS OF
PLAINTIFF, THUS CAUSING PLAINTIFF IMPRISONMENT,
LOSS OF LIBERTY, MENTAL ANGUISH, AND LOSS OF
PROPERTY, THAT OTHERWISE WOULD NOT HAVE OCCURED
WITHOUT THE ILLEGAL AND NEGLIGENT ACTIONS

OF DEFENDANT(S).

THEREFORE, PLAINTIFF PRAYS THE COURT TO ALLOW HIM TO PROCEED WITH THIS MOTION, AND SEEK REMEDY AND DAMAGES IN THE AMOUNT(S) LISTED.

PLAINTIFF FURTHER ATTESTS THAT NO OTHER ACTIONS OR LAWSUITS HAVE BEEN BEGUN IN FEDERAL COURT INVOLVING THESE FACTS.

PARTIES

A. PLAINTIFF

MICHAEL ALAN JOHNSON 0211783
SS # 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
PASQUOTANK CORRECTIONAL INSTITUTION
    UNIT V
527 COMMERCE DRIVE
ELIZABETH CITY, NC 27906-5005


B. DEFENDANT
DETECTIVE J.S. PINNEY
POSITION: DETECTIVE
EMPLOYED AT: NEW HANOVER CO. SHERIFF DEPARTMENT
ADDRESS: 3950 JUVENILE CENTER ROAD
            CASTLE HAYNE, NC 28429
CAPACITY: OFFICIAL


C. DEFENDANT: DETECTIVE A. FREEMAN
POSITION: DETECTIVE
EMPLOYED AT: NEW HANOVER COUNTY SHERIFF DEPT.
ADDRESS: 3950 JUVENILE CENTER ROAD
            CASTLE HAYNE, NC 28429

D. DEFENDANT: W.R WHITTED
   POSITION: MAGISTRATE
   EMPLOYED AT: NEW HANOVER COUNTY SHERIFF DEPARTMENT
   ADDRESS: 3950 JUVENILE CENTER ROAD
            CASTLE HAYNE, N.C. 28429
   CAPACITY: OFFICIAL


E. DEFENDANT: THOMAS L. OLD
   POSITION: ASSISTANT DISTRICT ATTORNEY
   EMPLOYED AT: NEW HANOVER COUNTY JUDICIAL BLDG.
   ADDRESS: 104 PRINCESS STREET
            P.O. BOX 2023
            WILMINGTON, NC 28402-2023
   CAPACITY: OFFICIAL


F. DEFENDANT: COUNTY OF NEW HANOVER, NC


G. DEFENDANT: STATE OF NORTH CAROLINA

## REMEDIES SOUGHT:

DETECTIVE J.S. PINNEY     - $ 460,000

DETECTIVE A. FREEMAN - $ 450,000

THOMAS L. OLD         - $ 750,000

WR WHITTED          - $ 45,000

NEW HANOVER COUNTY - $ 900,000

STATE OF NORTH CAROLINA - $ 300,000

ON MARCH 15, 2013, DETECTIVE J.S. PINNEY OF THE NEW HANOVER COUNTY SHERIFF'S DEPARTMENT, VICE AND NARCOTICS UNIT, RECEIVED A CALL FROM A CONCERNED CITIZEN WHO REPORTED THAT PLAINTIFF WAS GROWING MARIJUANA IN HIS HOME, AND THAT PLAINTIFF WAS A FELON.

ACTING UPON THIS INFORMATION, DETECTIVE PINNEY ATTEMPTED TO OBTAIN A WARRANT TO SEARCH THE PREMISES OF PLAINTIFF, BUT WAS DENIED SUCH WARRANT BY A NEW HANOVER COUNTY, N.C. MAGISTRATE. THIS DENIAL WAS BASED ON THE FACT THAT THE CONCERNED CITIZEN WHO MADE THE CALL HAD A PHONE NUMBER WITH AN AREA CODE AND PREFIX THAT IDENTIFIED IT AS BEING IN THE CITY OF OAKLAND, CALIFORNIA. THE CONCERN OF THE MAGISTRATE WAS WHY A PERSON, THAT WAS QUITE POSSIBLY LOCATED IN CALIFORNIA, WOULD BE CALLING TO REPORT INFORMATION ON A CITIZEN LOCATED IN NORTH CAROLINA. THIS REASON, COUPLED WITH LACK OF ANY OTHER PROOF OR EVIDENCE, LED THE MAGISTRATE TO DETERMINE THAT THERE WAS INSUFFICIENT PROBABLE CAUSE TO ISSUE A WARRANT, AND A SEARCH WARRANT WAS DENIED.

HOWEVER, ON MARCH 21, 2013, DETECTIVE PINNEY, ON HIS OWN INITIATIVE, TOOK IT UPON HIMSELF TO APPROACH THE PLAINTIFF, AT THE PLAINTIFF'S PRIVATE RESIDENCE, WITHOUT A WARRANT OR JUST CAUSE, TO SEE WHAT 'INFORMATION' HE COULD OBTAIN. AT

THIS POINT, PINNEY ENTERED INTO A CONSPIRACY WITH DETECTIVE A. FREEMAN TO TRY AND OBTAIN INFORMATION AND OR EVIDENCE AT THE PRIVATE RESIDENCE OF PLAINTIFF, KNOWING SUCH ACTION TO BE IMPROPER AND WITHOUT DUE PROCESS OF LAW, THUS VIOLATING PLAINTIFF'S RIGHT TO PRIVACY. ON MARCH 21, 2013, AT 7:15 PM (OFFICERS STATE THIS TO BE 8.15 PM), DETECTIVES PINNEY AND FREEMAN ARRIVED AT 4307 PARMELE ROAD, LOT 18, CASTLE HAYNE, NC, THE SAME BEING THE RESIDENCE OF PLAINTIFF.

DETECTIVES THEN PROCEEDED TO TRESPASS UPON THE PRIVATE PROPERTY OF PLAINTIFF, LOOKING INTO WINDOWS, WALKING AROUND BUILDINGS, VEHICLES AND OTHER PRIVATE PROPERTY, WITHOUT A WARRANT OR PERMISSION OF PLAINTIFF.

AFTER DETECTIVES FINISHED SEARCHING THE OUTSIDE OF THE RESIDENCE, THEY THEN KNOCKED ON THE FRONT DOOR, AND NOTIFIED PLAINTIFF THAT THEY WERE OFFICERS OF THE NEW HANOVER COUNTY SHERIFF'S DEPARTMENT. THE OFFICERS FURTHER STATED TO PLAINTIFF THAT THEY WANTED TO TALK TO HIM, AND ALSO COME INSIDE PLAINTIFF'S HOME SO THAT THEY COULD LOOK THROUGH HIS HOUSE.

PLAINTIFF IMMEDIATELY ASKED THE OFFICERS TO PRODUCE A WARRANT, PRIOR TO ENTRY OR QUESTIONING. OFFICER PINNEY THEN STATED TO PLAINTIFF THAT THEY HAD NO WARRANT, AND THAT THEY DID NOT NEED

A WARRANT. PINNEY STATED THAT THE OFFICERS HAD PROBABLE CAUSE AND COULD THEREFORE SEARCH THE RESIDENCE WITHOUT A WARRANT, AND THAT BY LAW, PLAINTIFF WAS OBLIGED TO ALLOW THE OFFICERS TO SEARCH.

PLAINTIFF THEN, CLEARLY AND CONCISELY STATED TO OFFICERS THAT HE (PLAINTIFF) DID NOT, IN ANY WAY, CONSENT TO ANY SEARCH OF HIS PERSON OR PROPERTY WITHOUT A WARRANT, AND FOR THE OFFICERS TO GO AND GET A WARRANT IF THEY INDEED WANTED TO SEARCH. PLAINTIFF THEN MADE IT CLEAR THAT NO FURTHER DISCUSSION WOULD BE MADE, OR NO ENTRY OR SEARCH ALLOWED WITHOUT SUCH A WARRANT, AND EXPRESSLY CONVEYED TO OFFICERS THAT THEY WERE TO REMOVE THEMSELVES FROM PLAINTIFF'S PRIVATE PROPERTY AT ONCE, AND NOT TO RETURN UNLESS AND WITHOUT A WARRANT.

OFFICER PINNEY THEN STATED THAT THE OFFICERS WERE GOING TO SEARCH PLAINTIFF'S PROPERTY, WITHOUT A WARRANT, WHETHER PLAINTIFF GAVE PERMISSION TO DO SO OR NOT.

AT THIS POINT, PLAINTIFF ONCE AGAIN REFUSED ENTRY TO OFFICERS, AND STARTED TO CLOSE THE DOOR OF HIS HOUSE, AS THE OFFICERS HAD NO WARRANT FOR ARREST, OR WARRANT TO SEARCH THE PREMISES.

THEN, WHILE PLAINTIFF WAS IN THE PROCESS

OF SHUTTING HIS DOOR, OFFICER PINNEY FORCED
ENTRY INTO THE HOUSE, DAMAGING BOTH THE DOOR
AND THE DOOR CASING OF THE PLAINTIFF'S HOUSE.

PLAINTIFF IMMEDIATELY PICKED UP HIS CELL
PHONE IN AN ATTEMPT TO CONTACT HIS ATTORNEY.
OFFICER PINNEY ASKED PLAINTIFF WHO HE WAS
CALLING, AND PLAINTIFF INFORMED OFFICER PINNEY
THAT HE WAS CALLING HIS ATTORNEY, A MR. JOHN
COLLINS, AND ONCE AGAIN REQUESTED THAT THE
OFFICERS LEAVE HIS (PLAINTIFF'S) PREMISES.

THE OFFICERS REFUSED TO LEAVE. OFFICER
FREEMAN HAD ALREADY BEGUN TO SEARCH INSIDE
THE RESIDENCE, AND WAS WALKING THROUGH THE
HOUSE LOOKING IN THE ROOMS. OFFICER PINNEY
REMAINED IN THE ROOM WITH PLAINTIFF, AND
PINNEY CONTINUED TO TRY AND PERSUADE PLAINTIFF
NOT TO CALL HIS ATTORNEY. WHEN THIS FAILED,
OFFICER PINNEY ORDERED PLAINTIFF TO PUT DOWN
HIS CELL PHONE. OFFICER PINNEY AGAIN TOLD
PLAINTIFF THAT HE (PLAINTIFF) HAD NO NEED TO
TALK TO AN ATTORNEY, AND THAT PLAINTIFF ONLY
NEEDED TO TALK TO OFFICERS, AND THAT IF HE
DID SO, THAT 'EVERYTHING WOULD BE OKAY'.

PLAINTIFF THEN TOLD OFFICER FREEMAN THAT HE
HAD NO RIGHT TO BE LOOKING AROUND OR SEARCHING
THE HOUSE, AND FOR HIM AND OFFICER PINNEY TO
LEAVE THE PREMISES AT ONCE, FREEMAN LAUGHED

AT THIS, AND TOLD PLAINTIFF 'TOO LATE NOW, WE'RE ALREADY INSIDE', AND CONTINUED TO SEARCH.

PLAINTIFF AGAIN STERNLY TOLD OFFICERS THAT HE WOULD NOT TALK TO THEM WITHOUT AN ATTORNEY PRESENT. PLAINTIFF THEN STATED THAT HE (PLAINTIFF) THOUGHT THAT HE HAD A RIGHT TO HAVE AN ATTORNEY PRESENT DURING QUESTIONING AND WHILE OFFICERS WERE SEARCHING THE PREMISES. PINNEY THEN TOLD PLAINTIFF THAT HE WAS NOT UNDER ARREST, AND THEREFORE DID NOT HAVE THE RIGHT TO HAVE AN ATTORNEY PRESENT, OR NO SUCH RIGHT TO CALL AN ATTORNEY. FREEMAN THEN STATED FROM A NEARBY ROOM "YOU GAVE UP ALL YOUR RIGHTS WHEN WE WALKED THROUGH YOUR DOOR". FREEMAN AND PINNEY THEN LAUGHED AT THIS.

PLAINTIFF TRIED ONCE AGAIN TO PICK UP HIS CELL PHONE AND CALL HIS ATTORNEY, AT WHICH POINT OFFICER PINNEY PHYSICALLY AND FORCEFULLY TOOK PLAINTIFF'S CELL PHONE FROM HIM, AND TOLD THE PLAINTIFF THAT HE (PLAINTIFF) COULD NOT MAKE ANY CALLS; AS PINNEY THOUGHT PLAINTIFF MIGHT BE CALLING HIS 'DRUG BUDDIES' TO HELP HIM ESCAPE, AND FOR THE SAFETY OF THE OFFICERS, THE OFFICERS COULD NOT ALLOW PLAINTIFF TO MAKE ANY CALLS. IT IS NOW OBVIOUS THAT THIS WAS A PLOY UTILIZED TO DENY PLAINTIFF HIS RIGHT TO CONTACT COUNSEL.

AT ABOUT THIS TIME, OFFICER FREEMAN ENTERED
THE ROOM WHERE DETECTIVE PINNEY AND PLAINTIFF
WERE, AND STARTED TELLING PLAINTIFF. THAT HE
(PLAINTIFF) ONLY NEEDED TO COOPERATE WITH POLICE,
AND THAT INDEED IF PLAINTIFF COOPERATED WITH
OFFICERS, THAT "THINGS WOULD GO EASY ON HIM".
(MEANING THE PLAINTIFF.)

   PLAINTIFF ONCE AGAIN STATED THAT HE WANTED
OFFICERS TO PRODUCE A WARRANT OR "GET OUT", AND
THAT PLAINTIFF WANTED TO SPEAK TO HIS ATTORNEY
BEFORE TALKING TO POLICE, OR BEFORE OFFICERS
ATTEMPTED TO SEARCH THE PREMISES.

   PINNEY ONCE AGAIN STATED THAT THEY (OFFICERS)
DID NOT NEED A WARRANT, AND THAT OFFICERS WERE
GOING TO SEARCH PLAINTIFFS RESIDENCE, WHETHER
PLAINTIFF "LIKED IT OR NOT".

   OFFICERS THEN PROCEEDED TO SEARCH PLAINTIFF'S
HOUSE, AGAINST PLAINTIFF'S WILL, AND FOUND
NUMEROUS MARIJUANA PLANTS AND GROWING EQUIPMENT.
AFTER THE PREMISES WERE SEARCHED, AND THIS
EQUIPMENT AND THE PLANTS WERE SEIZED AND
REMOVED, DETECTIVE PINNEY PRODUCED A WRITTEN
WAIVER FOR PLAINTIFF TO SIGN, GIVING OFFICERS
PERMISSION TO SEARCH PLAINTIFF'S HOUSE AND
PROPERTY. PLAINTIFF REFUSED TO SIGN SAID
DOCUMENT, AND ASKED OFFICER PINNEY WHY HE
WANTED HIM (PLAINTIFF) TO SIGN THIS WAIVER,

IF THE OFFICERS HAD PROBABLE CAUSE TO SEARCH THE PREMISES WITHOUT A WARRANT?

AT THIS POINT, PINNEY BECAME ENRAGED, AND BOTH OFFICERS BECAME VERBALLY ABUSIVE AND BELLIGERENT. FOR ABOUT THE NEXT HOUR OR MORE, BOTH OFFICERS EMPLOYED THREATS AND ABUSIVE AND AGGRESSIVE LANGUAGE TO COERCE PLAINTIFF TO SIGN THE CONSENT FORM TO ALLOW THE RESIDENCE TO BE SEARCHED, EVEN THOUGH THAT, AT THIS TIME, A SEARCH OF THE HOUSE HAD ALREADY BEEN COMPLETED.

MANY THREATS WERE LEVELED AT PLAINTIFF SUCH AS, IF PLAINTIFF DID NOT SIGN THE CONSENT FORM, THAT THE OFFICERS WOULD ARREST HIM, AND SET BOND SO HIGH THAT THE PLAINTIFF WOULD "NEVER GET OUT OF JAIL", OR THAT THE OFFICERS WOULD "MAKE LIFE HARD" ON PLAINTIFF IF HE REFUSED TO SIGN.

CONVERSELY, OFFICERS MADE STATEMENTS SUCH AS IF PLAINTIFF DID SIGN THE CONSENT FORM, THAT THE POLICE AND COURT WOULD "GO EASY ON HIM", AND THAT PLAINTIFF WOULD STAY OUT OF JAIL, ETC.

IN THE PRESENCE OF SUCH SUSTAINED HARASSMENT, THREATS, INTIMIDATION AND COERCION, AND THE INABILITY OF PLAINTIFF TO OBTAIN ADVICE OR SEEK DIRECTION FROM LEGAL COUNSEL (DUE TO TACTICS OF OFFICERS), PLAINTIFF RELUCTANTLY SIGNED THE

CONSENT FORM. WITH THE PREMISES HAVING ALREADY BEEN SEARCHED, AND WITH OFFICERS DENYING PLAINTIFF ANY CONTACT WITH HIS ATTORNEY, AND FAILING TO PROVIDE PLAINTIFF WITH ANY NOTIFICATIONS OF HIS MIRANDA RIGHTS, PLAINTIFF DID NOT KNOW WHAT HIS RIGHTS OR OPTIONS UNDER THE LAW WERE. IT IS NOW ABUNDANTLY CLEAR THAT HAD PLAINTIFF KNOW THAT HE HAD SUCH RIGHTS, SUCH AS TO HAVE AN ATTORNEY PRESENT, OR TO REFUSE SEARCH, THE OUTCOME OF THIS EVENT WOULD HAVE BEEN DRASTICALLY ALTERED.

HOWEVER, AS IT WAS, PLAINTIFF HAVING ONLY THE WORD OF, AND INFORMATION PROVIDED BY, OFFICERS CONFRONTING PLAINTIFF, AND PLAINTIFF HAVING TO REASONABLY BELIEVE THAT SUCH INFORMATION FROM OFFICERS WOULD BE TRUE AND IN ACCORDANCE WITH LEGAL AND CONSTITUTIONAL GUIDELINES, AND IN OBEYENCE TO THE VERY SELFSAME LAW THAT SAID OFFICERS WERE HIRED TO PROTECT AND SWORN TO UPHOLD, PLAINTIFF BELIEVED THAT HE HAD NO CHOICE BUT TO TRUST OFFICERS, AND COMPLY WITH WHAT HE (PLAINTIFF) BELIEVED TO BE A LEGAL ACTION.

BY OFFICERS OWN TESTIMONY, AS STATED IN DISCOVERY, OFFICERS THEMSELVES STATE THAT THEY ARRIVED INITIALLY AT PLAINTIFF'S RESIDENCE AT 8:15 PM (PLAINTIFF AVERS THAT THE ACTUAL TIME

WAS 7:15 PM); THAT PLAINTIFF SIGNED A CONSENT
TO SEARCH HOME AT 8:19 PM, THAT OFFICERS WENT
TO PLAINTIFF'S BUSINESS AT 9:34 PM, AND THAT A
GENERAL RIGHTS FORM (MIRANDA) WAS PRESENTED TO
PLAINTIFF FOR HIM TO SIGN AT 9:55 PM.

IT IS CRITICAL TO NOTE THAN ONLY AFTER
2½ HOURS OF QUESTIONING, SEARCHING, AND
SIGNING DOCUMENTS, AND ONLY AFTER OFFICERS
ALREADY OBTAINED ALL THE INFORMATION AND
EVIDENCE THEY WERE SEEKING, DID OFFICERS
INFORM PLAINTIFF OF HIS MIRANDA RIGHTS.

SUCH TACTICS AND DELAY IN PRESENTATION
OF NOTICE OF MIRANDA TO PLAINTIFF, AND
SUBSEQUENT ILLEGAL SEARCH AND SEIZURE OF
PLAINTIFF'S PROPERTY, CLEARLY SHOW THE INTENT
OF OFFICERS PINNEY AND FREEMAN TO CONSPIRE
TO DEPRIVE PLAINTIFF OF HIS CONSTITUTIONAL
AND MIRANDA RIGHTS.

NOT ONLY WAS PLAINTIFF'S RIGHT TO PRIVACY
VIOLATED, BUT ALSO HIS RIGHT TO PROTECTION FROM
ILLEGAL AND UNWARRANTED SEARCH AND SEIZURE
WITHOUT DUE PROCESS, BUT ALSO HIS CONSTITUTIONAL
RIGHT TO LEGAL COUNSEL WAS IGNORED AND
VIOLATED.

PLAINTIFF WAS NOT IMMEDIATELY ARRESTED. ON
APRIL 15, 2013, PLAINTIFF WAS INDEED ARRESTED ON
NUMEROUS CHARGES STEMMING FROM THE ILLEGAL

SEARCH MADE BY OFFICERS ON MARCH 21, 2013, AND THE DISCOVERY OF MARIJUANA ON THE PREMISES.

ALSO INCLUDED IN THESE CHARGES WAS A CHARGE OF POSSESSION OF A FIREARM BY FELON. IT WAS LATER CLAIMED THAT A FIREARM WAS FOUND AT THE RESIDENCE OF PLAINTIFF. DURING THE ILLEGAL SEARCH PERFORMED ON MARCH 21, 2013, PLAINTIFF KNEW NOTHING OF THIS UNTIL HE WAS CHARGED ON APRIL 16. PLAINTIFF HOLDS THAT NO MENTION OF A FIREARM WAS EVER MADE DURING THE SEARCH, NOR WAS PLAINTIFF EVER TOLD OF OR SHOWN ANY SUCH FIREARM DURING THE SEARCH.

IN ADDITION, THE SERIAL NUMBER OF THE FIREARM IN QUESTION, AS STATED BY DETECTIVES ON NUMEROUS DOCUMENTS, REPORTS AND WARRANTS, IS MHØ15737. PLAINTIFF HAS NEVER OWNED OR HAD IN HIS POSSESSION ANY SUCH FIREARM! FURTHERMORE, ACCORDING TO COLT MANUFACTURING COMPANY, (THE MANUFACTURER OF THE FIREARM IN QUESTION AS STATED BY DETECTIVES) NO SUCH FIREARM WAS EVER MANUFACTURED BY THEIR COMPANY WITH THAT SERIAL NUMBER.

IT IS THE ASSERTION OF THE PLAINTIFF THAT NO SUCH GUN EXISTS, NOR INDEED EVER DID EXIST, AND THAT THIS EVIDENCE, AND THE CHARGE SET FORTH BASED ON IT, WAS FALSELY AND FRAUD- ULENTLY MANUFACTURED BY DETECTIVES TO

INTIMIDATE AND COERCE PLAINTIFF.

PLAINTIFF AVERS THAT THIS MANUFACTURE OF EVIDENCE FURTHER ATTESTS TO THE CONSPIRACY BETWEEN DETECTIVES PINNEY AND FREEMAN AGAINST PLAINTIFF.

ON APRIL 15, 2013, AFTER PLAINTIFF WAS OFFICIALLY ARRESTED ON CHARGES IN CONNECTION WITH THIS EVENT, PLAINTIFF WAS PLACED IN CUSTODY OF THE NEW HANOVER COUNTY JAIL. PLAINTIFF WAS BROUGHT BEFORE THE MAGISTRATE ON DUTY, W. R. WHITTED. DETECTIVES PINNEY AND FREEMAN REQUESTED WHITTED TO PLACE PLAINTIFF UNDER A HIGH BOND. MAGISTRATE WHITTED THEN PLACED PLAINTIFF UNDER AN EXCESSIVE AND UNREASONABLE BOND OF $100,000$\underline{00}$. MAGISTRATE WHITTED SET THIS BOND, KNOWING SAME TO BE EXCESSIVE, UNUSUAL AND UNREALISTIC TO BENEFIT OFFICERS PINNEY AND FREEMAN AND THUS VIOLATING PLAINTIFF'S RIGHT TO A REASONABLE BOND UNDER THE CONSTITUTION OF THE UNITED STATES.

THE DAY FOLLOWING PLAINTIFF'S ARREST, A FRIEND OF PLAINTIFF ATTEMPTED TO POST BOND FOR PLAINTIFF. OFFICER PINNEY WAS SOMEHOW MADE AWARE OF THIS, AND CONFRONTED THIS PERSON (WHO WAS IN NO WAY INVOLVED IN CRIMINAL ACTIVITY). PINNEY STATED TO THIS PERSON THAT IF HE MADE ANY ATTEMPT TO ASSIST PLAINTIFF IN MAKING BAIL, THAT PINNEY WOULD CHARGE HIM WITH THE

SAME CRIMINAL CHARGES SET AGAINST PLAINTIFF.

THIS PERSON, IN FACE OF SUCH THREATS AND INTIMIDATION, CEASED IN HIS ATTEMPT TO ASSIST PLAINTIFF IN MAKING BAIL, EVEN THOUGH SUCH ASSISTANCE WAS IN ACCORDANCE WITH LEGAL AND PROPER DUE PROCESS OF LAW.

THIS ACTION, ON BEHALF OF OFFICER PINNEY, EFFECTIVELY PREVENTED PLAINTIFF FROM BEING RELEASED ON BAIL, AND THEREFORE DEPRIVED PLAINTIFF OF HIS LEGAL RIGHT TO MAKE BAIL. SUCH ACTION WAS DELIBERATE, AND CALCULATED BY OFFICER PINNEY FOR THE SOLE PURPOSE OF PREVENTING PLAINTIFF FROM UTILIZING HIS CONSTITUTIONAL RIGHT TO POST BOND. IN ADDITION, OFFICER PINNEY FURTHER TOLD THIS PERSON TO STAY AWAY FROM THE PLAINTIFF, AND NOT TO SPEAK TO PLAINTIFF OR TO HELP HIM IN ANY WAY.

OVER THE PERIOD OF THE NEXT SEVERAL MONTHS, PLAINTIFF ATTEMPTED IN VARIOUS WAYS TO POST BOND. AS PLAINTIFF'S MAIN AVENUE OF ASSISTANCE IN POSTING BAIL (THROUGH HIS FRIEND) WAS THWARTED BY OFFICER PINNEY, PLAINTIFF HAD TO SEEK A BOND REDUCTION HEARING IN ORDER TO HAVE BOND REDUCED SO THAT HE COULD MAKE BOND.

NUMEROUS TIMES, PLAINTIFF, ALONG WITH HIS COURT-APPOINTED ATTORNEY, TRIED TO REQUEST A

BOND HEARING. EACH TIME SUCH A HEARING WAS
REQUESTED, THE ASSISTANT DISTRICT ATTORNEY
HANDLING THE CASE, MR. THOMAS L. OLD, LEVELED
THREATS TO PLAINTIFF'S ATTORNEY TO PREVENT
SUCH A HEARING, AND THEREFORE PREVENT
PLAINTIFF FROM POSTING BOND.

THREATS SUCH AS IF PLAINTIFF PURSUED A
HEARING, OR IF PLAINTIFF TRIED TO POST BAIL IN
ANY WAY, THAT THE ASSISTANT DISTRICT ATTORNEY,
THOMAS OLD, WOULD REQUEST THAT THE AMOUNT
OF BOND BE DOUBLED OR INCREASED. ANOTHER
THREAT WAS THAT PLAINTIFF WOULD BE CHARGED
WITH ADDITIONAL CRIMINAL CHARGES IF ANY
ATTEMPT TO MAKE BOND WAS MADE.

CLEARLY, THIS WAY A PLOY TO PREVENT
PLAINTIFF FROM POSTING BAIL, AND THUS REMAIN
IN JAIL. IT WAS INITIATED BY PINNEY, AND
FOLLOWED UP BY ASSISTANT DISTRICT ATTORNEY
THOMAS OLD. AT THIS POINT, OLD ENTERED INTO
THE CONSPIRACY WITH OFFICERS PINNEY AND
FREEMAN TO DEPRIVE PLAINTIFF OF HIS ABILITY
TO MAKE BOND, THUS VIOLATING PLAINTIFF'S
CONSTITUTIONAL RIGHT TO A REASONABLE BOND.

THIS ACTION BY OLD TO PREVENT PLAINTIFF
FROM MAKING BAIL, EVENTUALLY DEVELOPED INTO
A TACTIC WITH WHICH OLD USED TO COHERCE
PLAINTIFF INTO ACCEPTING A PLEA THAT PLAINTIFF

DID NOT WISH TO ENTER, NOR WAS SUCH A
PLEA IN THE BEST INTEREST OF THE PLAINTIFF.
HOWEVER, IT WAS OBVIOUS THAT, UNLESS PLAINTIFF
ACCEPTED SUCH A PLEA OFFERED BY OLD, THAT
PLAINTIFF COULD REASONABLY ASSUME THAT HE
(PLAINTIFF) COULD, AND WOULD, REMAIN IN JAIL
INDEFINITELY.

THIS ACT WAS DELIBERATE, AND CALCULATED
AND UTILIZED BY OLD, WHO WAS SANCTIONED BY
NEW HANOVER COUNTY AND THE STATE OF
NORTH CAROLINA AS A DULY APPOINTED ASSISTANT
DISTRICT ATTORNEY, WILLFULLY AND KNOWINGLY
TO BE IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL
RIGHT TO A REASONABLE BOND, AND AGAINST DUE
PROCESS OF LAW.

AFTER APPROXIMATELY 6 MONTHS OF INCARCERATION,
AND THE INABILITY OF PLAINTIFF TO MAKE BOND
DUE TO THE INTERFERENCE OF OFFICERS AND
ASSISTANT DISTRICT ATTORNEY OLD, PLAINTIFF
REQUESTED THE COURT TO REPLACE HIS COURT-
APPOINTED COUNSEL. HOWEVER, PLAINTIFF FAIRED
NO BETTER WITH THIS NEW ATTORNEY, AND THE
BLOCKING OF PLAINTIFF'S ATTEMPT TO MAKE BAIL
WERE CONTINUED BY OLD.

EVENTUALLY, AFTER A FEW MORE MONTHS OF
IMPRISONMENT, AND THE EFFECTIVE DENIAL OF
BOND BY OLD, THREATS AND COERCION BY THE

POLICE AND OLD, PLAINTIFF REALIZED THE UTTER
FUTILITY OF HIS POSITION; THAT THE ASSISTANT
DISTRICT ATTORNEY, THE STATE OF NORTH
CAROLINA, AND NEW HANOVER COUNTY WERE GOING
TO FORCE HIM TO PLEA IN ACCORDANCE WITH
THEIR WISHES, OR PLAINTIFF'S IMPRISONMENT AND
MENTAL ANGUISH WOULD CONTINUE.

PLAINTIFF REASONABLY FELT THAT HIS SOLE
OPTION WAS TO ACCEPT SUCH A PLEA, IN ORDER
TO RELEASE HIMSELF FROM THE PRESSURES AND
CONSTRAINTS OF THE NEW HANOVER COUNTY
JUDICIAL SYSTEM AND ITS OFFICIALS, AND PURSUE
OTHER AVENUES OF RELIEF, SUCH AS PLAINTIFF
IS NOW ATTEMPTING TO DO WITH THIS MOTION
TO THE COURT.

PLAINTIFF DID INDEED ACCEPT A PLEA, SUCH
PLEA BEING THAT HE THOUGHT IT WAS IN HIS
BEST INTEREST AT THE TIME TO DO SO, BUT SUCH
PLEA BEING MADE UNDER PRESSURE, MENTAL
DURESS AND COERCION AND AGAINST THE
INTENTS AND WISHES OF THE PLAINTIFF.

PLAINTIFF WAS THEN SENTENCED AND REMANDED
TO THE NORTH CAROLINA DEPARTMENT OF CORRECTION.

FOR THESE REASONS, NOW COMES PLAINTIFF
AND PETITIONS THE COURT THAT HE BE HEARD,
AND THAT REAL AND PUNITIVE DAMAGES IN
THE AMOUNT(S) REQUESTED BE AWARDED HIM

FOR THE NUMEROUS VIOLATIONS OF HIS RIGHTS, AND THE SUBSEQUENT IMPRISONMENT, SUFFERING AND LOSS OF REAL PROPERTIES CAUSED BY THESE VIOLATIONS.

IN ADDITION, THE PLAINTIFF, BEING INCARCERATED AND WITHOUT EMPLOYMENT, FURTHER REQUESTS THAT THE COURT FIND HIM INDIGENT, AND ALLOW HIM TO PROCEED IN THIS ACTION IN PAUPERIS, AND FOR THE COURT TO SEE THAT HE IS ALLOWED TO ATTEND ANY AND ALL SUBSEQUENT HEARINGS IF THIS MOTION IS ALLOWED TO PROCEED.

# Summary

Plaintiff claims that the actions of officers of the New Hanover County Sheriff's Department, and actions of the officials of the State of North Carolina and New Hanover County listed in this motion, did indeed deprive plaintiff of his rights, both legal and constitutional.

These violations, including illegal search and seizure, failing to comply with Miranda, failing to inform plaintiff of his Miranda rights, denial of counsel while being questioned and during search of plaintiff's property, invasion of privacy, fraudulent manufacture of evidence, and refusal of reasonable bond, were illegal and in direct and blatant disregard to the constitutional rights of the plaintiff.

These violations were made knowingly and willfully by the parties listed, and led directly to, and were the sole reason for, the imprisonment of the plaintiff.

Had these violations not occured, it is the argument of the plaintiff, that no such imprisonment would have taken place, and therefore plaintiff would not have suffered such imprisonment, nor such damages as associated with said imprisonment, such

AS MENTAL AND PHYSICAL SUFFERING AND DURESS, LOSS OF PERSONAL AND REAL PROPERTY, AND RELATED LOSS OF INCOME, LIBERTY AND PURSUIT OF HAPINESS.

FOR THIS REASON, THE PLAINTIFF COMES FORTH, AND PRAYS THE COURT GRANT HIS MOTION / PETITION, AND AWARDS THE PLAINTIFF DAMAGES SOUGHT IN THE AMOUNT(S) LISTED.

SIGNED THIS 26TH DAY OF DECEMBER 20 13 .

SIGNATURE OF PLAINTIFF

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

12/26/13

DATE

SIGNATURE OF PLAINTIFF